PAUL K. GUNDOTRA AND RITA GUNDOTRA, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Gundotra v. Commissioner
Docket Nos. 21652-93, 21653-93, 21654-93
United States Tax Court
T.C. Memo 1995-303; 1995 Tax Ct. Memo LEXIS 305; 70 T.C.M. (CCH) 17; July 12, 1995, Filed *305 Decision will be entered under Rule 155. Paul K. Gundotra, pro se in docket No. 21652-93. For petitioners in docket Nos. 21653-93 and 21654-93: Paul K. Gundotra (an officer). For respondent: Chalmers W. Poston, Jr.
CHIECHI
CHIECHI
MEMORANDUM FINDINGS OF FACT AND OPINION CHIECHI, Judge: Respondent determined the following deficiencies in, and accuracy-related penalties on, petitioners' Federal income tax: Accuracy-
Related Penalty
Section
Petitioner
Year
Deficiency
6662(a) [2] Paul K. & Rita
1989
$ 37,351
$ 7,470
Gundotra
[3] 1990
21,041
4,208
PKG Foundation
1990
45,128
9,026
Trading Int'l
1990
12,605
2,521
The issues remaining for decision *306 in these consolidated cases are: (1) Was the investment activity in which petitioners Paul K. Gundotra and Rita Gundotra (Mr. and Mrs. Gundotra or the Gundotras) engaged during 1989 a trade or business? We hold that it was not. (2) Did the Gundotras underreport their capital gains for 1989? We hold that they did. (3) Are the Gundotras entitled to deduct for 1989 margin interest that they paid during that year even though they deducted that interest in their 1988 return? We hold that they are. (4) Are the Gundotras entitled to deduct for 1989 expenses paid during that year with respect to their travel to Europe and India? We hold that they are not. (5) Are the Gundotras entitled to depreciation deductions for 1989 with respect to a model house and an addition to an office building? We hold that they are not. (6) Are the Gundotras entitled to tax credit carryforwards to 1989? We hold that they are not. (7) Are the Gundotras liable for 1989 for the accuracy- related penalty under section 6662(a)? We hold that they are. (8) a. Is petitioner PKG Foundation Corp. (PKG) entitled for 1990 to reduce its gross receipts by amounts it claimed as cost of goods sold or to deduct those amounts *307 as business expenses under section 162(a)? We hold that it is not. b. Is PKG entitled for 1990 to a charitable contribution deduction under section 170(a)? We hold that it is in an amount determined pursuant to section 170(b)(2). (9) Is PKG entitled to depreciation deductions for 1990? We hold that it is not. (10) Is PKG liable for 1990 for the accuracy-related penalty under section 6662(a)? We hold that it is. (11) Is petitioner Trading Int'l Markets Corp. (Trading) entitled for 1990 to reduce its gross receipts by amounts it claimed as cost of goods sold or to deduct those amounts as business expenses under section 162(a)? We hold that it is not. (12) Is Trading liable for 1990 for the accuracy-related penalty under section 6662(a)? We hold that it is. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The Gundotras' mailing address was in Maryland at the time their petition was filed. The mailing addresses of PKG and Trading were in Maryland at the time their respective petitions were filed. Mr. Gundotra, who is originally from India, holds a degree in physics, chemistry, and mathematics. After moving to the United States, Mr. Gundotra opened Thickfilm *308 Int'l Micro- electronics (Thickfilm) during 1973 as a sole proprietorship. Thickfilm manufactured circuits "made on ceramic by printing repressed metal inks and then firing them to the furnace * * * for commercial and industrial and defense use." Investment Activity
The Gundotras reported in Schedule C (Profit or Loss from Business) of their 1989 return the income, gains, losses, and expenses attributable to their investment activity for that year. On or about September 6, 1988, Mr. and Mrs. Gundotra purchased for $ 2,092,899 (or an average price per share of $ 15.9994) a total of 130,843.8 shares of the Fidelity Select Technology mutual fund (Fidelity Select Technology fund). On or about March 27, 1989, they sold those shares for $ 2,256,507 (or an average price per share of $ 17.2458). Margin interest totaling $ 34,094 that was attributable to 1988 and that was related to the purchase of those shares was retained by Fidelity Select Technology fund from the sale proceeds Mr. and Mrs. Gundotra received in 1989. The Gundotras deducted that margin interest as a business expense in Schedule C of their 1988 return. They did not deduct that margin interest in their 1989 return. *309 Travel Expenses
During 1989, Mr. and Mrs. Gundotra traveled to Europe and India. They deducted amounts expended on that trip as business expenses in Schedule C of their 1989 return. Most of the persons whom Mr. and Mrs. Gundotra visited on that trip were friends. The trip to India was not for the purpose of selling the parts manufactured by Thickfilm. Model House
In October 1986, the Gundotras became a distributor of homes for Tri-Steel Structures, Inc. (Tri-Steel). [4] Prior to signing the distributorship agreement, the Gundotras spent approximately one year researching Tri-Steel's business and the unique ground loop heating system that can be incorporated in a Tri-Steel house. Prior to the years at issue, the Gundotras lived in a house located at 3210 Lumar Drive (Lumar Drive house) and built a model house of the Tri-Steel design (model house). The Gundotras moved into the model house sometime in *310 1988 and lived in it throughout 1989. During 1989, when the Gundotras were living in the model house, they rented the Lumar Drive house in order to generate income. Addition to Office Building
During 1984, an addition was added to the office building used by Thickfilm. PKG
Sometime around the end of 1989 or the beginning of 1990, all of the assets of Thickfilm were transferred to PKG, [5] which is a U.S. corporation. PKG's only employee during 1990 was Mr. Gundotra. PKG reduced its gross receipts by the following amounts that it claimed as cost of goods sold in its 1990 return: $ 17,312
Contract labor/professional services
950
Real estate taxes
2,380
Utilities/telephone
5,453
Dues and subscriptions
1,650
Charitable donations
4,783
Car expenses
5,780
Office expenses
6,521
Employee benefits (principally health insurance)
10,362
Travel
1,728
Repair/maintenance
5,258
Miscellaneous
62,177
*311 The $ 17,312 of contract labor was paid to an individual who maintained manufacturing and computer equipment and provided accounting services to PKG. The $ 950 in real estate taxes was paid with respect to the building used by both PKG and Trading. The $ 2,380 of utilities was paid with respect to the building shared by PKG and Trading. The $ 5,453 for dues and subscriptions was primarily paid for data obtained from Wall Street. The $ 1,650 of charitable donations was paid to a congregation of Jehovah's Witnesses. The $ 4,783 of car expenses was primarily attributable to lease payments on an automobile shared by PKG and Trading. The $ 5,780 of office expenses was for purchases of miscellaneous office expenses to operate an office for both PKG and Trading. The $ 6,521 of employee benefits was paid primarily for the purchase of health insurance on behalf of Mr. Gundotra. The $ 10,362 of travel expenses was paid for trips taken by the Gundotras and some or all of their children to Brazil, India, and Ft. Lauderdale. The $ 1,728 of repair/maintenance was paid for typical maintenance of an unidentified building and unidentified equipment. The $ 5,258 of miscellaneous expenses was paid *312 for the purchase of small, unidentified items. PKG had the following items of income for 1990: $ 8,272
Gross receipts
83,206
Dividends
260
Interest
PKG is entitled for 1990 to a section 243 dividends-received deduction in the amount of $ 61,059. Trading
Trading reduced its gross receipts by the following amounts that it claimed as cost of goods sold in its 1990 tax return: $ 12,000
Rent
5,526
Regulatory fees
8,662
Outside labor
5,000
Payments to Pershing
22,500
Management fee paid to PKG
53,688
The $ 12,000 of rent was paid to the Gundotras for use of the office building shared by PKG and Trading. The $ 5,526 of regulatory fees was for licenses from the National Association of Securities Dealers (NASD), the Securities and Exchange Commission, and other regulatory agencies that are necessary to operate a brokerage firm. The $ 8,662 of outside labor was paid to an individual for computer maintenance and research. The $ 5,000 paid to Pershing was in return for its services as a clearing corporation for securities transactions. [6]
*313 Trading had the following items of income for 1990: $  -0-  Gross receipts
29,316
Dividends
-0-  Interest
Trading is entitled for 1990 to a section 243 dividends-received deduction in the amount of $ 20,521. During 1990, only one client of Trading, i.e., TADAA Corp. (TADAA), made an actual trade, which consisted of the short sale of certain stock on or about November 9, 1990, and the repurchase of that stock about three days later. Trading reported no income for 1990 from that transaction. Mr. D. Gundotra, a relative of petitioner Paul K. Gundotra, was the trustee of TADAA. OPINION Petitioners [7] in these respective cases bear the burden of proving that respondent's determinations in the respective notices of deficiency are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). The only witness *314 to appear at trial was Mr. Gundotra. His testimony was for the most part general, vague, conclusory, and uncorroborated. Under those circumstances, we are not required to, and we do not, accept such testimony to support the positions of petitioners. See Geiger v. Commissioner, 440 F.2d 688, 689- 690 (9th Cir. 1971), affg. per curiam T.C. Memo. 1969-159; Mills v. Commissioner, 399 F.2d 744, 749 (4th Cir. 1968), affg. T.C. Memo. 1967-67; Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). With respect to several issues in these cases, Mr. Gundotra testified that the records to support petitioners' positions were destroyed. Under such circumstances, petitioners may meet their respective burdens of proof by presenting credible, secondary evidence. However, that the records in question may have been lost does not alter those burdens. See Malinowski v. Commissioner, 71 T.C. 1120, 1125 (1979). I. Evidentiary Issues
Respondent reserved objections to certain exhibits identified in the first stipulation for trial. *315 We admitted those exhibits into evidence conditionally, subject to our ruling on their admissibility. Respondent objected to Exhibit 25, "Copy of agreement between Paul and Rita Gundotra and PKG Foundation Corp. (BVI)", on grounds of (1) lack of authentication and (2) hearsay. Exhibit 25 is a contract in which the Gundotras purport to sell their stock in PKG in return for a future payment. With respect to respondent's objection to Exhibit 25 on the ground of lack of authentication, based on Mr. Gundotra's testimony, we find that the authentication standard of rule 901(a) of the Federal Rules of Evidence is satisfied. With respect to respondent's hearsay objection, Exhibit 25 is not hearsay because it is a contract that is not offered for the truth of its contents. Rather, it constitutes a "verbal act" with independent legal significance. See Kepner-Tregoe, Inc. v. Leadership Software, Inc., 12 F.3d 527, 540 (5th Cir. 1994); see also Freeman v. Metropolitan Life Ins. Co., 468 F. Supp. 1269, 1271 (W.D. Va. 1979). We therefore overrule respondent's objections to Exhibit 25, and we unconditionally admit it into evidence and *316 make it a part of the record in these cases. Respondent objected to the following documents on the grounds of hearsay: Exhibit 26, "Copy of letter dated September 23, 1992, to Paul Gundotra from D. Gundotra of PKG Foundation Corp. (BVI)"; Exhibit 27, "Copy of a letter dated October 1, 1989, to Paul Gundotra from D. Gundotra of Haryana, India"; Exhibit 28, "Copies of various newspaper articles"; Exhibit 34, "Letter dated 09/23/92 from D.F. Ford"; and Exhibit 35, "Means Cost Survey". Each of those exhibits is "a statement * * * offered in evidence to prove the truth of the matter asserted." See Fed. R. Evid. 801(c). Petitioners do not argue that any exception to the hearsay rule applies to any of those exhibits. Accordingly, respondent's hearsay objection to each of those exhibits is sustained, and we will not admit those exhibits into evidence. [8]
*317 II. Mr. and Mrs. Gundotra
A. Investment Activity
1. Trade or Business
The Gundotras reported income and deductions attributable to their investment activity in Schedule C of their return for 1989. Respondent determined that the Gundotras were not engaged in that activity as a trade or business during that year. To determine whether a taxpayer is engaged in an investment activity as a trade or business, courts generally distinguish between "traders", who are considered to be engaged in a trade or business, and "investors", who are not. Moller v. United States, 721 F.2d 810, 813 (Fed. Cir. 1983). A trader is someone who makes frequent trades, who seeks to profit through short-term market fluctuations, and who receives income principally from selling on an exchange rather than from dividends, interest, or long-term appreciation. In contrast, an investor is someone who makes investments for capital appreciation and income, usually without regard to short-term developments that would influence prices on the daily markets, and who seeks profits through dividends, interest, and long-term gains. See id.; King v. Commissioner, 89 T.C. 445, 458-459 (1987). *318 No matter how extensive his or her activities are, an investor can never be engaged in an investment activity as a trade or business. King v. Commissioner, supra at 459. The only evidence in the record concerning an actual trade made by the Gundotras during 1989 was their sale on or about March 27, 1989, of their entire stock interest in Fidelity Select Technology fund. [9] Evidence of one trade does not establish that the Gundotras were "traders" during that year. *319 On the instant record, we find that the Gundotras failed to prove that the investment activity in which they were engaged during 1989 was a trade or business. Consequently, we sustain respondent's determinations for 1989 that (1) the capital gains attributable to the investment activity of the Gundotras during that year are not income from a trade or business, and are gross income to them, and (2) the margin interest attributable to their investment activity is not deductible under section 162(a) as a business expense, but is an itemized deduction. 2. Capital Gains
Respondent determined that the Gundotras underreported their total capital gains for 1989 in the amount of $ 49,773 because they failed to include in their 1989 return that portion of the total capital gain of $ 163,607 they realized when they sold their stock in Fidelity Select Technology fund on or about March 27, 1989. The Gundotras claim that they reported that portion of that gain in their 1988 return and that that portion should offset their total capital gains for 1989. Even assuming arguendo that the Gundotras reported a portion of the 1989 capital gain in question in their 1988 return, their mistake in *320 overreporting their capital gains for 1988 would not affect their tax liability for 1989. The Gundotras have not pointed to, and we have not found, a single authority that would allow us to reduce their total capital gains for 1989 because of their alleged mistake in overreporting their total capital gains for 1988. [10]
On the instant record, we sustain respondent's determination that the Gundotras underreported their total capital gains for 1989 in the amount of $ 49,773. 3. Margin Interest
In Schedule C of their 1989 return, the Gundotras deducted $ 31,067 of margin interest. In an *321 amendment to their petition, the Gundotras assert that they are entitled to an additional deduction for 1989 for margin interest in the amount of $ 34,094. The Gundotras assert, and we have found, that they paid $ 34,094 in margin interest when they sold their stock in Fidelity Select Technology fund on or about March 27, 1989, and that they did not deduct that amount in their 1989 return. Since they are cash method taxpayers, which respondent does not dispute, the Gundotras argue that they are entitled to deduct for 1989 the $ 34,094 of margin interest they failed to deduct in their return for that year, even though they admit that they erroneously deducted that margin interest in their 1988 return. Respondent agrees that the Gundotras erroneously deducted in their 1988 return the $ 34,094 of margin interest that is at issue. She asserts that she cannot correct that error because the parties agree that the period of limitations has expired for 1988. Consequently, according to respondent, the Gundotras are estopped herein under the duty of consistency from deducting for 1989 the same interest they erroneously deducted for 1988. Although not altogether clear, the Gundotras appear *322 to argue that the mitigation of limitation provisions, sections 1311-1314 (mitigation provisions), are applicable. They do not address respondent's contention regarding the duty of consistency, and respondent does not address petitioners' contention regarding the mitigation provisions. Section 1311 provides in pertinent part: (a) GENERAL RULE. -- If a determination (as defined in section 1313) is described in one or more of the paragraphs of section 1312 and, on the date of the determination, correction of the effect of the error referred to in the applicable paragraph of section 1312 is prevented by the operation of any law or rule of law * * * then the effect of the error shall be corrected by an adjustment made in the amount and in the manner specified in section 1314. (b) CONDITIONS NECESSARY FOR ADJUSTMENT. -- (1) MAINTENANCE OF AN INCONSISTENT POSITION. -- Except in cases described in paragraphs (3)(B) and (4) of section 1312, an adjustment shall be made under this part only if -- * * * (B) in case the amount of the adjustment would be assessed and collected in the same manner as a deficiency under section 1314, there is adopted in the determination a position maintained *323 by the taxpayer with respect to whom the determination is made, and the position * * * maintained by the taxpayer in the case described in subparagraph (B) is inconsistent with the erroneous inclusion, exclusion, omission, allowance, disallowance, recognition, or nonrecognition, as the case may be.
Section 1312 provides in pertinent part: (2) DOUBLE ALLOWANCE OF A DEDUCTION OR CREDIT. -- The determination allows a deduction or credit which was erroneously allowed to the taxpayer for another taxable year * * *.
Section 1313 provides in pertinent part: (a) DETERMINATION. -- For purposes of this part, the term "determination" means -- (1) a decision by the Tax Court or a judgment, decree, or other order by any court of competent jurisdiction, which has become final * * *
Absent the application of a judicial doctrine such as the duty of consistency, the Gundotras are entitled to an itemized deduction for 1989 for the $ 34,094 of margin interest they paid in that year. If we were to decide that the Gundotras are entitled to deduct the margin interest at issue for 1989, they would be allowed to deduct interest that they erroneously deducted for 1988, as to *324 which the period of limitations has expired. If we were to render a decision sustaining the position advanced by the Gundotras here (viz., they are entitled to deduct $ 34,094 of margin interest for 1989), that decision would be inconsistent with the erroneous allowance of a deduction for that same interest in a prior closed year (viz., 1988), see sec. 1311(b)(1)(B), and would constitute a determination that the Gundotras are entitled to deduct $ 34,094 of margin interest for 1989 that they erroneously deducted for 1988, see sec. 1313(a)(1). In that event, the mitigation provisions would in effect allow respondent to reopen the Gundotras' taxable year 1988 solely for the purpose of assessing and collecting (as if it were a deficiency) the amount of tax attributable to the erroneous allowance of the $ 34,094 deduction claimed by them for 1988 for the margin interest they paid in 1989. Sec. 1314(a) and (b). Thus, there would be no reason to estop petitioners from deducting for 1989 the margin interest they paid in that year. Under the circumstances presented here where the mitigation provisions would be available to respondent if we were to determine that the Gundotras are entitled *325 to deduct for 1989 the margin interest at issue, we adopt the position maintained by the Gundotras here and hold that they are entitled to an itemized deduction for 1989 for the $ 34,094 of margin interest they paid in that year that they erroneously deducted for 1988. Thus, we do not address respondent's argument regarding the duty of consistency. B. Travel Expenses
In Schedule C of their 1989 return, the Gundotras claimed a deduction for $ 13,329 of expenses relating to a trip they took during that year to Europe and India. Respondent determined that the Gundotras are not entitled to that claimed deduction because they failed to prove (1) that those expenses were ordinary and necessary expenses paid in carrying on a trade or business or for the production or collection of income and (2) that they complied with the substantiation requirements of section 274(d). [11]
*326 Section 162(a) generally allows a deduction for ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business.[12] The determination of whether an expenditure satisfies the requirements of deductibility under section 162 is a question of fact. Commissioner v. Heininger, 320 U.S. 467, 475 (1943). In general, an expense is ordinary if it is considered "normal, usual, or customary" in the context of the particular business out of which it arose. Deputy v. du Pont, 308 U.S. 488, 495-496 (1940). Ordinarily, an expense is necessary if it is appropriate and helpful to the operation of the taxpayer's trade or business. Commissioner v. Tellier, 383 U.S. 687, 689 (1966); Carbine v. Commissioner, 83 T.C. 356, 363 (1984), affd. 777 F.2d 662 (11th Cir. 1985). *327 Based on the instant record, we find that the Gundotras failed to prove that the expenses they paid during 1989 with respect to their trip to Europe and India are ordinary and necessary expenses in carrying on a trade or business within the meaning of section 162(a). Mr. Gundotra testified in a general manner that the business purposes of the trip to Europe were to solicit possible investors and to look at resort properties for investment purposes and that the business purposes of the trip to India were to solicit possible investors and to inquire about establishing a manufacturing facility in India. Neither Mr. Gundotra's testimony nor any of the documents in the record pertaining to the Gundotras' trip provides enough detail to enable us to conclude that the expenses at issue were paid or incurred in carrying on a trade or business. [13] Even assuming arguendo that the record were adequate and did establish those facts, it does not show that the expenses at issue were ordinary and necessary expenses in carrying on any such trade or business. *328 The Gundotras also failed to prove that they satisfy the substantiation requirements of section 274(d). To satisfy those requirements, a taxpayer generally is required to keep an account book, diary, or similar document that records the information required by section 274(d) (including a written statement of the business purpose of the expenditure) and that is prepared at or near the time the expense is paid. Sec. 1.274-5(c)(2), Income Tax Regs. Documentation not prepared at or near the time the expense is paid is deemed to have less probative value than documentation prepared contemporaneously thereto. See sec. 1.274-5(c)(1), Income Tax Regs. The Gundotras did not present any records containing the information required by section 274(d) and the regulations thereunder that they prepared at or near the time of the travel in question. Although they did prepare a summary of their travel at the time of the audit by the Internal Revenue Service of their return for the year at issue, we find that summary to be insufficient evidence to sustain their burden of substantiation as required by section 274(d) and the regulations thereunder. Based on the present record, we find that the Gundotras *329 did not meet the substantiation requirements of section 274(d), in that, inter alia, they failed to document (1) the business purpose of the expenses incurred during their trip to Europe and India and (2) the business relationship to the persons entertained on that trip. See sec. 274(d); sec. 1.274- 5(c), Income Tax Regs. On the instant record, we sustain respondent's determination that the Gundotras are not entitled to deduct for 1989 the expenses relating to their trip to Europe and India. C. Depreciation
The Gundotras claimed depreciation deductions for 1989 for, inter alia, a model house and an addition to an office building. Respondent determined that the Gundotras are not entitled to the deductions claimed for those two items. [14] Section 167(a), in general, allows a deduction for depreciation of property used in a trade or business or for the production of income. *330 1. Model House
Respondent contends that, pursuant to section 280A, the Gundotras are not entitled to a depreciation deduction for 1989 for the model house because the Gundotras resided in that house throughout that year. Section 280A(a) provides: (a) GENERAL RULE. -- Except as otherwise provided in this section, in the case of a taxpayer who is an individual * * *, no deduction otherwise allowable under this chapter shall be allowed with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence.
A "dwelling unit" is defined to include a "house". Sec. 280A(f)(1)(A). Thus, the model house built by the Gundotras constitutes a dwelling unit regardless of any business purpose the Gundotras may have had when they built it. Section 280A(d)(1) provides in part that: a taxpayer uses a dwelling unit during the taxable year as a residence if he uses such unit (or portion thereof) for personal purposes for a number of days which exceeds the greater of -- (A) 14 days, or (B) 10 percent of the number of days during such year for which such unit is rented at a fair rental. [15]
*331 The Gundotras claim that they did not use the model house during 1989 for personal purposes because they lived in that house for business reasons. Specifically, the Gundotras contend that they moved into the model house in order to (1) provide security because it was in a high crime area and (2) demonstrate that it was energy efficient. Even assuming arguendo that the Gundotras occupied the model house for the reasons they advance, on the present record, we find that they failed to prove that their personal use of the model house did not exceed 14 days during 1989. The Gundotras had no other residence during 1989. In fact, throughout 1989, the Gundotras rented to an unidentified lessee the Lumar Drive house they had occupied prior to moving into the model house. Consequently, it appears to us that, even assuming arguendo the Gundotras occupied the model house partly for business reasons, they used it extensively for personal purposes during 1989. Since the Gundotras failed to prove that they did not use the model house for personal purposes for more than 14 days during 1989, they are subject to the limitations provided in section 280A for 1989. [16]
*332 Apart from our consideration of section 280A, it is not clear from the record that the Gundotras used the model house during 1989 in a trade or business or for the production of income. The Gundotras claim that they were in the trade or business of selling Tri-Steel houses. While the Gundotras did sign a distributorship agreement with Tri-Steel to sell Tri-Steel houses, that agreement expired prior to 1989. Although the Gundotras maintained an extensive file of sales brochures concerning Tri-Steel houses, they failed to prove that they ever attempted to sell a single Tri-Steel house. Accordingly, on the instant record, we find that the Gundotras failed to prove that they used the model house during 1989 in a trade or business or for the production of income. On the instant record, we sustain respondent's determination that the Gundotras are not entitled to a depreciation deduction for 1989 with respect to the model house. 2. Addition to Office Building
Respondent determined that the Gundotras are not entitled to a depreciation deduction for 1989 with respect to an addition to an office building because they failed to establish their basis in that addition. The Gundotras presented *333 no records to show the actual amount they expended in making the addition to the building in question. They claim that those records were accidentally destroyed. Under such circumstances, we are willing to consider credible, secondary evidence. Malinowski v. Commissioner, 71 T.C. at 1125. In an effort to establish their basis in that addition, the Gundotras attempted to introduce into evidence two documents that they claim provide a reasonable estimate of the cost of building that type of addition. We held above that those documents are not admissible because they are hearsay. [17] Consequently, the only evidence in the record to establish the Gundotras' basis in the building addition at issue is Mr. Gundotra's vague and conclusory testimony, on which we are unwilling to rely. [18] On that record, we find that the Gundotras failed to prove their basis in that addition.
*334 On the instant record, we sustain respondent's determination that the Gundotras are not entitled for 1989 to a depreciation deduction for the building addition in question. D. Tax Credit Carryforwards
The Gundotras claimed in their 1989 return tax credit carryforwards to 1989 in the amount of $ 97,168 consisting of both targeted jobs credits and investment tax credits. Respondent determined that those claimed carryforwards should be disallowed in full because the Gundotras failed to establish that they in fact had any credits to carry forward to 1989. Respondent stipulated that the Gundotras earned certain targeted jobs credits for each of their taxable years 1981 through 1988. [19] Respondent disputes that the Gundotras earned investment tax credits for either 1985 or 1987. [20] Even assuming arguendo that the Gundotras earned targeted jobs credits and investment tax credits in the amounts claimed for years prior to the years at issue, respondent argues that the Gundotras are not entitled to any credit carryforwards because they failed to substantiate that they in fact had unused credits to carry forward. *335 *336 Credits are a matter of legislative grace, and taxpayers must prove their entitlement to them. Rule 142(a); Segel v. Commissioner, 89 T.C. 816, 842 (1987). A taxpayer is required to maintain records as long as the contents of those records may become material in the administration of any internal revenue law. Sec. 1.6001-1(e), Income Tax Regs. If a credit affects the calculation of tax due for an open year, respondent is entitled to recalculate the amount of credits earned and/or used for a particular year even if the period of limitations has expired for that year. Hill v. Commissioner, 95 T.C. 437, 445-446 (1990); Mennuto v. Commissioner, 56 T.C. 910, 923 (1971). We agree with respondent that the Gundotras failed to prove their entitlement to tax credit carryforwards to 1989. The Gundotras did not present their tax returns for any year prior to 1986. Although the Gundotras' returns for 1987 and 1988 are part of the record herein, a tax return is not proof of entitlement to a credit or deduction claimed therein; a tax return is merely a statement of the taxpayer's claim. See Roberts v. Commissioner, 62 T.C. 834, 837 (1974); *337 Seaboard Commercial Corp. v. Commissioner, 28 T.C. 1034, 1051 (1957). since the Gundotras claim that the records to support the credit carryforwards were accidentally destroyed, we are willing to accept credible, secondary evidence to meet their burden of proof. Malinowski v. Commissioner, 71 T.C. at 1125. However, aside from certain tax returns, the Gundotras did not present any evidence of their income or deductions for any of the years 1981 through 1988. On the instant record, we are unable to find, and the Gundotras did not prove, that they had tax credits to carry forward to 1989. On the instant record, we sustain respondent's determination that the Gundotras are not entitled to tax credit carryforwards to 1989. E. Accuracy-Related Penalty
Respondent determined that the Gundotras are liable for 1989 for the accuracy-related penalty under section 6662(a) because (1) the Gundotras' underpayment of tax for that year was due to negligence or disregard of rules and regulations and (2) petitioners had a substantial understatement of income for that year for which they did not have substantial authority and which they *338 did not adequately disclose in their 1989 return. [21]
Section 6662(a) imposes an addition to tax equal to 20 percent of the underpayment of tax attributable to, inter alia, (1) negligence or disregard of rules or regulations and (2) any substantial understatement of income tax. Sec. 6662(b)(1) and (2). For purposes of section 6662(a), the term "negligence" includes any failure to make a reasonable attempt to comply with the Code, and "disregard" includes any careless, reckless, or intentional disregard. Sec. 6662(c). Negligence has also been defined as a lack of due care or failure to do what a reasonable person would do under the circumstances. Leuhsler v. Commissioner, 963 F.2d 907, 910 (6th Cir. 1992), affg. T.C. Memo. 1991-179; Antonides v. Commissioner, 91 T.C. 686, 699 (1988), *339 affd. 893 F.2d 656 (4th Cir. 1990); Neely v. Commissioner, 85 T.C. 934, 947 (1985). With respect to individuals, an understatement of tax is substantial if it exceeds the greater of 10 percent of the tax required to be shown in the return or $ 5,000. Sec. 6662(d) (1)(A). An understatement of tax is equal to the amount of tax required to be shown in the return less the amount shown therein. Sec. 6662(d)(2)(A). The amount of the understatement is reduced to the extent that it is due to the tax treatment of any item for which there is or was substantial authority or for which the facts affecting the item's tax treatment were adequately disclosed in the return and there was a reasonable basis for the position adopted by the taxpayer. [22] Sec. 6662(d)(2)(B). *340 The accuracy-related penalty under section 6662(a) does not apply to any portion of an underpayment if it is shown that there was reasonable cause for such portion and that the taxpayer acted in good faith. Sec. 6664(c)(1). The determination of whether a taxpayer acted with reasonable cause and in good faith depends upon the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. The most important factor is the extent of the taxpayer's effort to assess his or her proper tax liability. Id.
We have carefully examined the record in these cases. It provides no basis on which we can find that the Gundotras were not negligent, that they had substantial authority, or that they acted with reasonable cause and in good faith with respect to any portion of the underpayment that respondent contends is subject to the accuracy-related penalty. We have considered all of the Gundotras' arguments and find them to be without merit. On the instant record, we sustain respondent's determination that, except for the portion of the underpayment for 1989 that is attributable to a mathematical error, [23] the Gundotras are liable for the accuracy-related penalty with respect to their *341 underpayment of tax for that year. III. PKG
A. Cost of Goods Sold
PKG contends that it was involved in two separate lines of business during 1990: (1) an investment business and (2) a continuation of Thickfilm's manufacturing business. In its 1990 return, PKG reduced its gross receipts for that year by the following amounts that it claimed as cost of goods sold: $ 17,312
Contract labor/professional services
950
Real estate taxes
2,380
Utilities/telephone
5,453
Dues and subscriptions
1,650
Charitable donations
4,783
Car expenses
5,780
Office expenses
6,521
Employee benefits (principally health insurance)
10,362
Travel
1,728
Repair/maintenance
5,258
Miscellaneous
62,177
PKG did not indicate in its 1990 return which of the items it claimed as a cost of goods sold is attributable to its alleged investment business and which is attributable to its manufacturing business. Respondent determined that the items claimed by PKG as cost of *342 goods sold should be disallowed in full. Respondent contends that, to the extent any of the items at issue is attributable to PKG's investment activity, (1) such item is not a deductible business expense because PKG's investment activity during 1990 did not constitute the carrying on by PKG of a trade or business, and (2) assuming arguendo that such activity were a trade or business, such item would not be a cost of goods sold because an investment business involves selling a service that does not have a cost of goods sold. Although respondent concedes that, to the extent any of those items is attributable to PKG's manufacturing business, such item is either a cost of goods sold or a deductible business expense, she contends that PKG has not established that any of those items is attributable to the manufacturing business. [24] We agree with respondent. With respect to PKG's claim regarding deductible business expenses *343 attributable to its investment activity, PKG failed to prove that that activity during 1990 constituted the carrying on of a trade or business. It has not shown that it had any clients during that year or that it even attempted to obtain clients during that year. On the instant record, none of the items claimed by PKG is a deductible business expense attributable to its investment activity. [25]
*344 Even assuming arguendo that PKG had established that its investment activity during 1990 constituted a trade or business, it appears that such a business would not have had a cost of goods sold because it would have involved the selling of a service and would not have involved the selling of any goods as part of "a manufacturing, merchandising, or mining business". See sec. 1.61-3(a), Income Tax Regs; see also Hahn v. Commissioner, 30 T.C. 195, 197-198 (1958), affd. per curiam 271 F.2d 739 (5th Cir. 1959). With respect to PKG's claim that it is entitled to reduce its gross receipts by certain items allegedly attributable to its manufacturing business as cost of goods sold or to deduct such items as business expenses, PKG must first prove which of the items claimed was attributable to that business. The instant record is devoid of any detailed explanations of the claimed expenses (except for the charitable contribution discussed below) and of any allocation of those expenses between PKG's manufacturing business and its investment activity. On the instant record, we find that PKG failed to prove that any of those expenses is *345 attributable to its manufacturing business. [26] Accordingly, PKG is not entitled to reduce its gross receipts by the items it claims were attributable to its manufacturing business or to deduct such items as business expenses.
Although PKG is not entitled to treat the items at issue as either cost of goods sold or deductible business expenses, PKG is entitled to a charitable contribution deduction for one of those items. Mr. Gundotra testified that PKG paid $ 1,650 to a congregation of Jehovah's Witnesses. The parties stipulated that PKG substantiated that the amount of each *346 item it claimed as a cost of goods sold was expended for the purpose designated. Respondent does not argue that the donation by PKG to the Jehovah's Witnesses did not constitute a charitable contribution within the meaning of section 170(c). Consequently, we find that PKG made a charitable contribution of $ 1,650 during 1990. Accordingly, we hold that PKG is entitled under section 170(a) to deduct that contribution for that year in an amount determined pursuant to section 170(b)(2). On the instant record, except for the charitable contribution deduction that we have allowed PKG in an amount determined under section 170(b)(2), we sustain respondent's determination that the amounts claimed by PKG in its 1990 return as cost of goods sold are not allowable as such; nor is PKG entitled to deduct such amounts as business expenses. B. Depreciation
PKG claimed depreciation deductions totaling $ 29,068 in its 1990 return with respect to manufacturing equipment, telephone equipment, and computers. Respondent determined that PKG is not entitled to those deductions because it did not establish that the property in respect of which it claimed depreciation was used in a trade or business *347 or for the production of income as required by section 167(a). The only evidence in the record of the uses of the property depreciated is the vague and conclusory testimony of Mr. Gundotra. That testimony is not specific or detailed enough to allow us to find that PKG used the property in question in a trade or business or for the production of income. Consequently, we find that PKG failed to prove that it used the property in question in a trade or business or for the production of income. On the instant record, we sustain respondent's determination that PKG is not entitled to the depreciation deductions it claimed for 1990. C. Personal Holding Company
Respondent determined that PKG is liable for the personal holding company tax imposed by section 541. A personal holding company is defined by section 542(a) as any corporation (other than one described in section 542(c)) if (1) at least 60 percent of its adjusted ordinary gross income for the year is personal holding company income, and (2) at any time during the last half of the taxable year more than 50 percent in value of its outstanding stock is owned, directly or indirectly, by not more than five individuals. PKG argues *348 that it is not a personal holding company because it was a foreign corporation as defined in section 542(c)(7). [27] Respondent counters that PKG failed to establish that all of its stock was owned by nonresident aliens during the last half of 1990. Mr. Gundotra testified that during April 1990 he sold the shares of PKG to PKG Foundation Corporation (BVI) (hereinafter PKG (BVI)), a British Virgin Islands corporation, in return for which the buyer agreed to pay a fixed amount over time. Mr. Gundotra further testified that PKG (BVI) is owned by an Indian trust with Mr. D. Gundotra as trustee and that Mr. D. Gundotra assured him that that trust does not have any U.S. owners. *349 [28]
We are not sure why the parties are arguing over the ownership of PKG. Regardless of who owns the stock of PKG, it is not a "foreign corporation". The taxpayer who filed the petition herein is PKG, and not PKG (BVI) which owns the stock of PKG. According to Mr. Gundotra's testimony, PKG is a U.S. corporation. Thus, PKG is a domestic corporation, and not a foreign corporation. See sec. 7701(a)(4) and (5). Even assuming arguendo that PKG were a foreign corporation, we are unwilling to rely on the alleged assurances to petitioner Paul K. Gundotra by Mr. D. Gundotra, who is related to Mr. Gundotra in some unidentified way and who did not testify at trial, that PKG has no U.S. citizens or residents as owners. On the instant record, we find that PKG failed to prove that all of its stock is owned, directly or indirectly, by nonresident alien individuals. In the event that the *350 income requirements of section 542(a)(1) are satisfied after PKG's gross income is recalculated in accordance with this Opinion, we sustain respondent's determination that PKG is liable for the personal holding company tax imposed by section 541. D. Accuracy-Related Penalty
Respondent determined that PKG is liable for 1990 for the accuracy-related penalty under section 6662(a) for that year because (1) PKG's underpayment of tax was due to negligence or disregard of rules and regulations and (2) PKG had a substantial understatement of income for that year for which it did not have substantial authority and which it did not adequately disclose in its 1990 return. [29] With respect to corporations, an understatement of tax is substantial if it exceeds the greater of 10 percent of the tax required to be shown in the return or $ 10,000. Sec. 6662(d)(1)(B). *351 We have carefully examined the record in these cases. It provides no basis on which we can find that PKG was not negligent, that it had substantial authority, or that it acted with reasonable cause and in good faith with respect to any portion of the understatement determined by respondent. We have considered all of PKG's arguments and find them to be without merit. On the instant record, we sustain respondent's determination that PKG is liable for the accuracy-related penalty with respect to its entire underpayment of tax for 1990. IV. Trading
A. Cost of Goods Sold
Trading contends that it was engaged during 1990 in the trade or business of being a securities broker. Trading reduced its gross receipts for 1990 by the following amounts claimed as cost of goods sold: $ 12,000
Rent
5,526
Regulatory fees
8,662
Outside labor
5,000
Payments to Pershing
22,500
Management fee paid to PKG
53,688
Respondent determined that the items claimed by Trading as cost of goods sold should be disallowed in full. Respondent contends that none of the items at issue is deductible as a business expense because during 1990 Trading was not carrying on a trade or *352 business. Respondent further contends that even assuming arguendo that Trading were engaged during 1990 in the trade of business of being a securities broker, it could not have had a cost of goods sold because it would have been providing services. We agree with respondent. Trading failed to prove that during 1990 it was carrying on a trade or business. Although Trading was apparently a NASD- licensed broker/dealer, only one of its customers made a trade through it during that year, and it did not report any income as a result of that trade. [30] On the instant record, we find that none of the items claimed by Trading is a deductible business expense. [31]
*353 Even assuming arguendo that Trading had shown that its activities during 1990 constituted a trade or business, it appears that those activities would not have had a cost of goods sold because they would have involved the selling of services and would not have involved the selling of goods as part of "a manufacturing, merchandising, or mining business" See sec. 1.61-3(a), Income Tax Regs; see also Hahn v. Commissioner, 30 T.C. at 197-198. On the instant record, we sustain respondent's determination that the amounts claimed by Trading as cost of goods sold are not allowable as such; nor is Trading entitled to deduct such amounts as business expenses. B. Accuracy-Related Penalty
Respondent determined that Trading is liable for 1990 for the accuracy-related penalty under section 6662(a) because (1) Trading's underpayment of tax was due to negligence or disregard of rules and regulations and (2) Trading had a substantial understatement of income for that year for which it did not have substantial authority and which it did not adequately disclose in its 1990 return. [32]
*354 We have carefully examined the record in these cases. It provides no basis on which we can find that Trading was not negligent, that it had substantial authority, or that it acted with reasonable cause and in good faith with respect to any portion of the understatement determined by respondent. We have considered all of Trading's arguments and find them to be without merit. On the instant record, we sustain respondent's determination that Trading is liable for the accuracy-related penalty with respect to its entire underpayment of tax for 1990. To reflect the foregoing and the concessions of the parties, Decisions will be entered under Rule 155. Footnotes
1. Cases of the following petitioners are consolidated herewith: PKG Foundation Corp., docket No. 21653-93; and Trading Int'l Markets Corp., docket No. 21654-93.↩
2. All section references are to the Internal Revenue Code (Code) in effect for the years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
3. All issues for 1990 with respect to petitioners Paul K. Gundotra and Rita Gundotra were resolved through concessions and settlements of the parties.↩
4. Mr. Gundotra signed the distributorship agreement on behalf of Thickfilm, an unincorporated entity.↩
5. It appears that the original name of PKG was Thickfilm International Microelectronics, Inc. The name was changed to PKG Foundation Corp. sometime during 1990. For convenience, we refer to petitioner PKG Foundation Corp., which is the name used in the petition it filed with the Court, as PKG.↩
6. The specific nature of the $ 22,500 management fee paid to PKG is not disclosed by the record.↩
7. As used in this Opinion, the term "petitioners" refers to all of the petitioners in these consolidated cases (i.e., the Gundotras, PKG, and Trading).↩
8. Because we have ruled that Exhibit 35 is inadmissible hearsay, we do not consider respondent's additional objection to that exhibit that it is opinion evidence with respect to which an expert report was not submitted in violation of Rule 143(f).↩
9. It appears that the Gundotras may have engaged in additional investment transactions during 1989, since they reported capital gains for that year in addition to the amounts at issue herein. However, assuming arguendo that they did engage in such additional investment transactions, the evidence in the record is insufficient for us to find that the investment activity in which the Gundotras were engaged during 1989 was a trade or business. Mr. Gundotra testified that the Gundotras made trades totaling over $ 500 million during 1987 and 1988. That testimony as to years that are not before the Court was not corroborated. Moreover, even assuming arguendo that the Gundotras made such trades and that they were traders during 1987 and 1988, the present record does not establish that the Gundotras continued to be traders during 1989.↩
10. The Gundotras argue that secs. 1311-1314, the mitigation of limitations provisions, enable us to reach such a result. However, assuming arguendo that those provisions were applicable to the Gundotras' alleged mistake in their 1988 return, the remedy provided would be to correct the 1988 mistake, and not to reduce their total capital gains for 1989. This we cannot do, since the Court has no jurisdiction over taxable year 1988.↩
11. Sec. 274(d) provides in pertinent part: (d) SUBSTANTIATION REQUIRED. -- No deduction or credit shall be allowed -- (1) under section 162 or 212 for any traveling expense (including meals and lodging while away from home),
* * * unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating the taxpayer's own statement (A) the amount of such expense or other item, (B) the time and place of the travel, * * * (C) the business purpose of the expense or other item, and (D) the business relationship to the taxpayer of persons entertained * * *.↩
12. The Gundotras do not argue, nor would the record support an argument, that the travel expenses at issue are deductible under sec. 212(a) as ordinary and necessary expenses paid or incurred for the production or collection of income.↩
13. In fact, the Gundotras failed to prove that during any relevant period they were involved in carrying on the trades or businesses of investing on behalf of clients or investing in resort properties, much less that they were carrying on those trades or businesses during the course of their travel to Europe and India during 1989.↩
14. Although respondent determined in the notice of deficiency that the Gundotras are not entitled to depreciation deductions with respect to certain other items, after concessions, only their entitlement to depreciation deductions for the model house and the office building addition remain at issue.↩
15. The Gundotras do not claim that they rented the model house to other persons during 1989.↩
16. The Gundotras did not argue, and the record would not support, that any portion of the model house was used exclusively as a home office within the meaning of sec. 280A(c)(1).↩
17. Assuming arguendo that we had made those documents part of the instant record, our holdings herein would not have changed.↩
18. Nor does the record provide enough information to enable us to make a reasonable estimate of the Gundotras' basis in the addition to the building in question. See Coloman v. Commissioner, 540 F.2d 427, 431-432 (9th Cir. 1976), affg. T.C. Memo. 1974-78; Williams v. United States, 245 F.2d 559, 560↩ (5th Cir. 1957).
19. Although respondent agrees that the Gundotras paid qualified wages in 1987 and 1988, respondent argues that the Gundotras overstated their credits for those years because they incorrectly calculated them under the law in effect prior to those years. For certain employees beginning employment subsequent to Dec. 31, 1985, sec. 51(a) provides that the targeted jobs credit is equal to 40 percent of qualified first-year wages (rather than the 50 percent of qualified first-year wages and 25 percent of qualified second-year wages that the Gundotras used in calculating their targeted jobs credits for 1987 and 1988). We therefore find that the Gundotras erroneously calculated their 1987 and 1988 credits. Thus, for purposes of determining the amount, if any, of the credit carryforwards to which the Gundotras are entitled for 1989, the targeted jobs credits that the Gundotras earned for 1987 and 1988 are to be calculated under the Code in effect for those years.↩
20. The Gundotras claimed investment tax credits for 1985 for an office building purchased in 1980, an addition to an office building completed in 1985, and unidentified manufacturing equipment. The Gundotras claimed investment tax credits for 1987 for the model house. We agree with respondent that the Gundotras failed to prove that they earned investment tax credits for either 1985 or 1987. An investment tax credit is allowed only on "section 38 property." See sec. 46(c)(1). Sec. 48(a)(1) defines "section 38 property" as "(A) tangible personal property (other than an air conditioning or heating unit), or (B) other tangible property (not including a building and its structural components)". Neither the office building, office building addition, nor the model house is property for which the investment tax credit is available, and the Gundotras did not argue that those credits were claimed for any tangible personal property in those structures. Although the manufacturing equipment may qualify as "section 38 property", the Gundotras failed to identify such equipment or prove their basis therein. Accordingly, based on the instant record, we find that, for purposes of determining the amount of credit carryforwards, if any, to which the Gundotras are entitled for 1989, they are not entitled to take into account an investment tax credit for either 1985 or 1987.↩
21. Respondent concedes the accuracy-related penalty should not be imposed on the portion of the underpayment for 1989 that is attributable to a mathematical error in the Gundotras' 1989 return.↩
22. The Gundotras do not argue that their understatement for 1989 was attributable in whole or in part to positions that were adequately disclosed in their return for that year. We therefore shall not address that point.↩
23. See supra↩ note 21.
24. We note that PKG's gross receipts for 1990 from its manufacturing business were only $ 8,272.↩
25. Assuming arguendo that PKG had shown that it was attempting to start up a new trade or business involving some type of investment activity, expenses paid or incurred in connection with starting a new trade or business are not deductible under sec. 162(a). See, e.g., Richmond Television Corp. v. United States, 345 F.2d 901, 907 (4th Cir. 1965), vacated and remanded on other issues 382 U.S. 68 (1965), original holding on this issue reaffd. 354 F.2d 410, 411 (4th Cir. 1965), overruled on other grounds NCNB Corp. v. United States, 684 F.2d 285, 289 (4th Cir. 1982); Hardy v. Commissioner, 93 T.C. 684, 687↩ (1989), affd. in part and remanded in part on another issue per order (10th Cir., Oct. 29, 1990).
26. Most of the items in question appear to relate to both PKG's manufacturing business and its investment activity, but we have no way of determining from the record (other than guessing) what would be a reasonable estimate of the appropriate allocation of expenses between the two activities. See Coloman v. Commissioner, 540 F.2d at 431-432; Williams v. United States, 245 F.2d at 560↩.
27. Sec. 542(c)(7) provides that a "foreign corporation" will not be treated as a personal holding company "if all of its stock outstanding during the last half of the taxable year is owned by nonresident alien individuals, whether directly or indirectly through foreign estates, foreign trusts, foreign partnerships, or other foreign corporations".↩
28. Although not altogether clear, we assume that PKG is arguing that PKG (BVI) did not have any U.S. citizens or residents as shareholders.↩
29. PKG does not argue that its understatement for 1990 was attributable in whole or in part to positions that were adequately disclosed in the return. We therefore will not address that point.↩
30. That trade was made on behalf of TADAA Corp. by Mr. D. Gundotra as trustee.↩
31. Even assuming arguendo that the record were to show that Trading, which was apparently formed during November 1989, was attempting to start up a new trade or business during 1990, expenses paid or incurred in connection with starting a new trade or business are not deductible under sec. 162(a). See, e.g., Richmond Television Corp. v. United States, 345 F.2d at 907; Hardy v. Commissioner, 93 T.C. at 687↩.
32. Trading does not argue that its understatement for 1990 was attributable in whole or in part to positions adequately disclosed in the return. We therefore will not address that point.↩